IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WISTIN ABRAHAM GALVAN LOPEZ,

    Petitioner,

v.                                                              No. 2:25-cv-1288 JB/DLM

KRISTI NOEM, et al.,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Wistin Abraham Galvan Lopez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Galvan Lopez brings a claim for unlawful detention under the Immigration and Nationality Act (INA) and for a violation of his due process rights under the Fifth Amendment. He also filed a Motion for Temporary Restraining Order and Preliminary Injunction (TRO). (Doc. 4.) Having reviewed the record and relevant law, the undersigned recommends that the Petition be **GRANTED** and his Motion for Temporary Restraining Order and Preliminary Injunction be **DENIED AS MOOT**.[1]

### I.    Factual and Procedural Background

Petitioner Galvan Lopez is a 22-year-old citizen and national of Guatemala. (Doc. 1 ¶ 13.) He entered the United States without inspection near Roma, Texas on August 10, 2019, when he was approximately 16 years old. (*See id.* ¶ 20; *see also* Doc. 4-6 at 2.) United States Border Patrol agents encountered him the same day and took him into custody after they determined he had entered unlawfully. (Doc. 4-6 at 2.) Because he was an unaccompanied minor, Border Patrol

---

[1] On December 29, 2025, United States District Judge James O. Browning entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 2.)

processed him as an Unaccompanied Alien Child (UAC) and transferred him to the custody of the Office of Refugee Resettlement (ORR) pursuant to 6 U.S.C. § 279 and 8 U.S.C. § 1232. (Doc. 1 ¶ 20; *see also* Doc. 4-6 at 2.) ORR later released him "to the care of loved ones in the United States." (Doc. 1 ¶ 20.)

After his release, Petitioner lived primarily in the Rochester, New York area, where he attended high school and later worked in construction. (*Id.* ¶ 22.) Petitioner has no criminal history. (*Id.* ¶ 21.)

On March 24, 2025—more than five years after his initial release from Department of Homeland Security (DHS) custody—Immigration and Customs Enforcement (ICE) agents detained Petitioner in Rochester as "collateral" during an enforcement operation targeting another individual. (*Id.* ¶¶ 1, 21.) ICE subsequently transferred him to the Otero County Processing Center (OCPC) in Chaparral, New Mexico and initiated removal proceedings on the basis that he was "present in the United States without being admitted or paroled, or . . . arrived in the United States at any time or place other than as designated by the Attorney General[]'" pursuant to INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* ¶¶ 6, 13; *see also* Docs. 4-1 at 1; 4-6 at 2.)

Petitioner sought a custody redetermination under 8 U.S.C. § 1226(a). (*See* Doc. 1 ¶ 23.) On August 12, 2025, an Immigration Judge (IJ) found that he was detained under § 1226(a), determined that he was neither a danger to the community nor a flight risk, and granted bond in the amount of $5,000. (*See id.*; *see also* Doc. 4-3) "The same day, ICE filed a Form EOIR-43, unilaterally staying the IJ's [bond] order" pending appeal. (Doc. 1 ¶ 24 (citing 8 C.F.R. § 1003.19(i)(2)); *see also* Doc. 4-4.)

2

On October 23, 2025, the Board of Immigration Appeals (BIA) reversed the IJ's decision, concluding that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Doc. 1 ¶ 25; *see also* Doc. 4 at 2.) Petitioner has now been detained for more than nine months. (*See* Doc. 4 at 2.)

On December 22, 2025, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, asserting two claims arising from his continued detention: (1) violation of the INA and (2) violation of due process under the Fifth Amendment. (*See* Doc. 1.) He asks the Court to: (i) assume jurisdiction over this matter; (ii) issue a Writ of Habeas Corpus ordering Respondents to immediately release him from custody pending these proceedings; (iii) in the event that he is not released, order Respondents to Show Cause why the petition should not be granted; (iv) enjoin Respondents from transferring him away from the jurisdiction of this District pending these proceedings; (v) declare that his detention violates the Due process Clause of the Fifth Amendment; (vi) award reasonable attorney's fees and costs; and (vii) "[g]rant any further relief this Court deems just and proper." (*Id.* at 7.)

On January 11, 2026, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking immediate release pending resolution of his habeas petition. (*See* Doc. 4.)

The Federal Respondents filed their response in opposition to the TRO and the Habeas Petition on January 21, 2026. (Doc. 14.) On January 23, 2026, Respondent Dora Castro, Warden of the Otero County Processing Center, filed a notice joining the position taken by the federal

3

Respondents. (Doc. 18.) That same day, Petitioner filed his Reply. (Doc. 19.) The matter is now fully briefed and ready for disposition.[2]

## II. Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

## III. Discussion

Petitioner contends that his continued detention is unlawful because DHS is detaining him under the wrong statutory provision in violation of the INA, and because his redetention without an individualized bond hearing violates the Due Process Clause. (*See* Docs. 1 at 6–7; 4 at 3–4.) Both arguments are well-grounded in the record and consistent with recent decisions scrutinizing DHS's evolving detention practices. For the reasons set forth below, the undersigned concludes that § 1226(a)—not § 1225(b)(2)—governs Petitioner's custody. Because the BIA applied the wrong detention provision, habeas relief is warranted.

---

[2] As Respondent Castro has adopted the Federal Respondents' position, the undersigned will refer to them collectively as "Respondents" throughout this PFRD.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. The existing record is sufficient to resolve the habeas petition, and it also provides an adequate basis to address the TRO to the extent necessary.

A.   **Statutory Claim**

The undersigned's analysis centers on the INA's statutory provisions governing detention under § 1225 and eligibility for a bond hearing under § 1226.

8 U.S.C. §§ 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The statutory question here is straightforward: whether a noncitizen who entered the United States years ago, lived openly in the interior, and was processed under the UAC framework is properly detained under § 1225(b)—a provision designed for individuals "seeking admission"—or under § 1226(a), which governs the detention of noncitizens already present in the United States. *See id.* at 297, 303. The application of the statutory scheme to the facts, however, is a bit less cooperative and requires some careful untangling.

Courts confronting similar factual and statutory circumstances have recently examined this precise issue. It is instructive to examine how other courts have parsed the interaction between §§ 1225 and 1226 when a noncitizen entered unlawfully years earlier but later sought immigration relief from within the United States. A recent decision, *Singh v. Noem*, provides a useful roadmap of that framework.

In *Singh v. Noem*, the court addressed the statutory basis for the federal government's detention of Singh, a noncitizen who entered the United States unlawfully in September 2023 and was re-detained in September 2025 while traveling through a United States Border Patrol checkpoint in New Mexico. *Singh v. Noem*, No 2:25-cv-1110 JB/KK, 2026 WL 146005, at *35

(D.N.M. Jan. 20, 2026). The court explained that Singh was never lawfully admitted or paroled into the United States, and therefore he is deemed an "applicant for admission." *Id.* at *14 (citing 8 U.S.C. § 1225(a)(1)). Despite arguments that Singh's subsequent detention must fall under § 1226(a), entitling him to a bond hearing, the court concluded that Singh's detention was governed by § 1225(b)(2), which mandates detention and does not require a bond hearing. *See id.* at *33.

The *Singh* court began by analyzing whether § 1225(b)(1), the expedited removal provision, applies to Singh. *Id.* at *35. Although Singh had been present in the United States for less than two years at the time of his re-detention and had not been admitted or paroled, the court found that § 1225(b)(1) did not apply because immigration officers charged him under § 1182(a)(6)(A)(i), rather than the specific inadmissibility grounds, §§ 1182(a)(6)(C) or (a)(7), required for expedited removal. *Id.* The court noted that DHS's choice of inadmissibility ground appeared intentional and that, regardless of Singh's factual eligibility, the statutory prerequisites for § 1225(b)(1) were not satisfied. *Id.*

Having determined that § 1225(b)(1) did not apply, the court turned to § 1225(b)(2), which functions as a catchall provision for applicants for admission not covered by § 1225(b)(1). *See id.* at *18, *34. The court emphasized that § 1225(b)(2) applies only to aliens who are both "applicants for admission" and "seeking admission," and it rejected the government's argument that these terms are synonymous. *Id.* at *35. The court also rejected the contention that "seeking admission" applies only to arriving aliens at the border. *Id.* Instead, the court interpreted "seeking admission" as an active process that can occur inside the United States when an alien who has not been admitted seeks lawful status—"an alien must request admission into the United States." *Id.*

Applying that interpretation, the court concluded that Singh was "seeking admission" because he filed an asylum application after entering the United States unlawfully. *Id.* After

6

entering unlawfully on September 15, 2023—but before his second and operative detainment on September 4, 2025—Singh submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* at *36. The court further observed that Singh's pending asylum proceedings demonstrated that he had been found to have a credible fear of persecution, which placed him squarely within the detention framework of § 1225(b). *Id.* The court relied on 8 C.F.R. § 235.3(c)(2), which provides that asylum applicants who have been found to have credible fear "shall be detained" under § 1225(b). *Id.* The court thus concluded that Singh's asylum application did not shift him into § 1226(a) detention, but instead reinforced the conclusion that § 1225(b)(2) governed his custody. *Id.*

The court also noted that immigration officers determined Singh was not "clearly and beyond a doubt . . . entitled to be admitted," a statutory requirement for detention under § 1225(b)(2). *Id.* at *35 (citing 8 U.S.C. § 1225(b)(2)). The court further explained that Singh admitted to unlawful entry, had a pending removal case, and sought relief from removal; thus, the court concluded that he could not possibly meet the "clearly and beyond a doubt" standard. *Id.* Ultimately, the court held that Singh was properly detained under § 1225(b)(2), not § 1226(a). *Id.* Because § 1225(b)(2) mandates detention without the possibility of a bond hearing, the court denied Singh's request for release or a bond hearing. *Id.* at *33.

To begin, Petitioner in this case, as in *Singh*, entered without inspection and was never admitted or paroled. (*See* Doc. 1 ¶ 20.) He is therefore an "applicant for admission" under § 1225(a)(1). *See Singh*, 2026 WL 146005, at *14 (discussing 8 U.S.C. § 1225(a)(1)).

Second, § 1225(b)(1) does not apply here. Petitioner is currently detained based on his March 24, 2025 arrest in Rochester, New York. (Docs. 1 ¶¶ 1, 21; 4 at 1; 4-6 at 2; 14 at 2.) By that time, he had been in the United States for more than five years, placing him outside the

7

two-year statutory window during which DHS may designate certain noncitizens for expedited removal under § 1225(b)(1)(A)(iii). *See* 8 U.S.C. § 1225(b)(1)(A)(iii). Moreover, on both occasions—his initial 2019 encounter and his 2025 re-detention—DHS charged him under § 1182(a)(6)(A)(i), like in *Singh*, rather than charging him under § 1182(a)(6)(C) or § 1182(a)(7), the only inadmissibility grounds that trigger § 1225(b)(1). (*See* Doc. 4-6 at 2.) Thus, the statutory prerequisites for § 1225(b)(1) are not met.

Third, because Petitioner has not taken any action that constitutes "seeking admission," § 1225(b)(2) does not apply. As explained in *Singh*, "seeking admission" requires an active request for lawful admission—"an alien must request admission into the United States." *Singh*, 2026 WL 146005, at *35. Petitioner has made no such request. Unlike in *Singh*, the record contains no fact or allegation that Petitioner has filed an asylum application, a visa application, or any other affirmative request for lawful admission. He is defending against removal, but he is not affirmatively seeking admission. The government's position—that all non-admitted noncitizens are "seeking admission"—is the precise interpretation *Singh* rejected. (*See* Doc. 14 at 10–11.) *See also Singh*, 2026 WL 146005, at *35 (Noting that this "argument improperly equates the term 'applicant for admission' and 'alien seeking admission.'").

Because neither § 1225(b)(1) nor § 1225(b)(2) applies, detention defaults to § 1226(a). This is the statutory structure *Singh* adopts: § 1226(a) governs detention of noncitizens who are not subject to either § 1225(b)(1) or § 1225(b)(2). *Id.* at *33–36; *see also Jennings*, 583 U.S. at 287–89 (explaining that §§ 1225(b) and 1226 create separate detention tracks and that § 1226(a) governs when § 1225(b) does not apply).

Under the framework articulated in *Singh*, Petitioner's detention is governed by § 1226(a), not § 1225(b)(2). Petitioner is therefore entitled to an individualized bond hearing before a neutral

8

decisionmaker. Because the BIA's reversal of the IJ's bond order rested entirely on the conclusion that § 1225(b)(2) applies, his continued detention is unlawful under the INA and warrants habeas relief.

Similarly, in *Cortez-Gonzalez v. Noem*, where a noncitizen had lived in the United States for nearly her entire life with no criminal history and was later arrested in the interior and charged under § 1182(a)(6)(A)(i), the court rejected DHS's attempt to classify her detention under § 1225(b)(2)(A). *See Cortez-Gonzalez v. Noem*, --- F. Supp. 3d ---, No. 2:25-cv-0985 MLG/KK, 2025 WL 3485771, at *3–5 (D.N.M. Dec. 4, 2025). The court explained that § 1225(b)(2) applies only when a noncitizen is both an "applicant for admission" and "seeking admission," and that long-term residents who have taken no affirmative steps to request lawful admission are not "seeking admission" within the meaning of the statute. *Id.* at *4–5. Because the statutory prerequisites for § 1225(b)(2) were not met, the court held that detention defaulted to § 1226(a). *Id.* at *5. The same reasoning applies here: Petitioner has lived in the United States for years, was charged under § 1182(a)(6)(A)(i), and has made no affirmative request for admission. As in *Cortez-Gonzalez*, DHS's reliance on § 1225(b)(2) is inconsistent with the statutory text, and § 1226(a) governs his detention.

**Government's Argument**

Respondents argue that Petitioner is properly detained under § 1225(b)(2)(A) because he entered without inspection, has never been admitted, and therefore remains an "applicant for admission" under § 1225(a)(1). (*See* Doc. 14 at 11–12.) Relying on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), Respondents contend that all noncitizens who entered unlawfully are necessarily "seeking admission" for purposes of § 1225(b)(2), regardless of how long they have lived in the interior or whether they have made any affirmative request for lawful admission. (*See*

9

*id.* at 10–11, 13–15.) Under this view, § 1225(b)(2) applies automatically to any noncitizen who has not been lawfully admitted, and § 1226(a) applies only to admitted noncitizens.

Respondents further argue that *Jennings* does not support Petitioner's position because the Supreme Court's reference to "aliens already in the country" refers only to admitted noncitizens removable under § 1227(a). (*Id.* at 13 (citing *Jennings,* 583 U.S. at 288–89).) They also emphasize that DHS's prior practice of treating interior arrests as § 1226(a) cases cannot override the statute's plain text. (*Id.* at 12–13.)

The undersigned notes at the outset that BIA decisions are not binding authority. *Loper Bright Enters. v. Raimondo* instructs courts to "exercise independent judgment in determining the meaning of statutory provisions" and "not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024); *see also Cortez-Gonzalez*, 2025 WL 3485771, at *5 (citations omitted) (noting that the BIA's interpretation of statutes is not binding, "particularly when the result lacks sound legal foundation"). The remaining difficulty with Respondents' position is that it depends on collapsing two statutory terms that *Singh* treats as distinct. *Singh* expressly rejects the argument that every "applicant for admission" is necessarily "seeking admission," holding instead that "seeking admission" requires an active request for lawful admission, such as filing asylum or a visa application. *Singh*, 2026 WL 146005, at *35. Respondents' reading—drawn from *Hurtado*—treats unlawful entry alone as sufficient to satisfy § 1225(b)(2)'s "seeking admission" requirement. (*See* Doc. 14 at 10–11.) That interpretation is inconsistent with *Singh*'s conclusion that § 1225(b)(2) applies only when the statutory elements are met.

In sum, the statutory framework, as interpreted by courts in this district, contradicts Respondents' position. Petitioner is an applicant for admission, but he is not "seeking admission"

within the meaning of § 1225(b)(2), and DHS's charging decisions place him outside the ambit of § 1225(b)(1). Under the structure Congress enacted—and that *Jennings*, *Singh*, and *Cortez-Gonzalez* describe—§ 1226(a) governs by default. Because the BIA applied the wrong detention provision (*see* Doc. 4-5 at 3), its decision cannot stand.

Accordingly, the undersigned concludes that § 1226(a) governs Petitioner's custody and that the BIA erred in applying § 1225(b)(2). Because Petitioner is detained under the wrong statutory provision, his continued detention is unlawful under the INA and warrants habeas relief.

### B.  Due Process Claim

Petitioner also argues that his redetention without an individualized bond hearing violates the Due Process Clause. (*See* Doc. 4 at 5–7.) As a preliminary matter, the undersigned notes that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).

Courts in this district addressing similar redetention scenarios have repeatedly held that noncitizens who have been released from immigration custody acquire a protected liberty interest in remaining free and that the government may not revoke that liberty without constitutionally adequate procedures.

In *Cuya-Priale v. Castro*, the court held that a noncitizen released on bond "acquire[s] a protectable liberty interest in remaining out of custody[,]" and that redetention without a hearing violates due process. *Cuya-Priale v. Castro*, No. 2:25-cv-1166 KG/DLM, 2025 WL 3564145, at *2 (D.N.M. Dec. 12, 2025) (citations and quotation marks omitted). The court emphasized that years of lawful presence, employment, and community ties strengthen the liberty interest at stake. *See id.* at *2.

11

The same principle guided the court in *Danierov v. Noem*, where DHS re-detained a noncitizen who had lived in the United States for years, complied with all conditions of release, and had no criminal history. *Danierov v. Noem*, No. 2:25-cv-1215 KG/KRS, 2026 WL 45288 (D.N.M. Jan. 6, 2026). The court held that once a noncitizen has been released under § 1226(a), due process requires a pre-deprivation bond hearing at which DHS must demonstrate a material change in circumstances showing danger or flight risk before revoking that release. *Id.* at *2–3. Because DHS redetained the noncitizen without any such showing, the court concluded that the risk of erroneous deprivation was substantial and that detention without a hearing violated the Due Process Clause. *Id.* at *2–3.

And in *Hernandez-Parrilla v. De Anda-Ybarra*, the court enjoined DHS from detaining a noncitizen without a pre-deprivation bond hearing even where detention was only threatened. *Hernandez-Parrilla v. De Anda-Ybarra*, No. 2:25-cv-1224 MIS/KK, 2025 WL 3632769, at *4–6 (D.N.M. Dec. 15, 2025). The court explained that years of lawful presence and compliance with release conditions create a strong liberty interest that cannot be overridden without constitutionally adequate procedures. *Id.* at *5.

Petitioner's circumstances align with these decisions. He lived in the United States for more than five years, worked, developed community ties, and has no criminal record. (*See* Doc. 1 ¶¶ 20–22, 27; *see also* Doc. 4-6 at 1.) DHS redetained him without any individualized finding of danger or flight risk, and without any showing of materially changed circumstances. As in the cases above, redetention here violates the Due Process Clause.

Taken together, the statutory and constitutional authorities establish that Petitioner's continued detention is unlawful.

### C. Disposition of the Habeas

Because an Immigration Judge has already conducted an individualized custody determination under § 1226(a) and found Petitioner neither a danger nor a flight risk, the government has already received the process that § 1226(a) requires. (*See* Docs. 1 ¶¶ 3, 23; 4 at 2; 14 at 2.) Respondents offered no evidence suggesting that Petitioner poses any danger to the community or risk of flight. The only reason Petitioner remains detained is that the BIA vacated the IJ's bond order based on its conclusion that § 1225(b)(2) applies. (*See* Docs. 1 ¶ 25; 4-5; 14 at 2.) As explained above, that conclusion is incorrect. Thus, the IJ's prior bond determination becomes operative unless DHS can demonstrate materially changed circumstances warranting redetention. *See Cuya-Priale*, 2025 WL 2564145, at *2 (citations omitted) (noting that "[a]lthough DHS may revoke release 'at any time' [under] 8 U.S.C. § 1226(b), courts require 'a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight' before such revocation").

Accordingly, I recommend that the Court order that the IJ's prior bond determination be reinstated and that Petitioner be released. DHS may seek redetention only if it can demonstrate materially changed circumstances.

### D. Disposition of Petitioner's TRO

In Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction, he seeks to enjoin the Respondents from continuing his detainment and his immediate release pending the adjudication of his habeas petition. (*See* Doc. 4 at 2, 7.) Because the relief he seeks in the TRO is duplicative of the relief he seeks in the Petition, granting the Petition will moot the TRO.

### E. Attorney's Fees

The Petition includes a one-sentence request for "[r]easonable attorney's fees and costs." (Doc. 1 at 7.) The Equal Access to Justice Act (EAJA) authorizes an award of fees to a prevailing party in a civil action against the United States unless the government's position was substantially justified or special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit has confirmed that the EAJA applies to habeas actions challenging immigration detention. *See Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

Here, however, neither party has developed the issue. The petition contains no argument addressing the EAJA's statutory requirements, and Respondents have not addressed fees at all.

Accordingly, I recommend that Petitioner's request for attorney's fees be **denied without prejudice**.

### IV. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Petition for Writ of Habeas Corpus (Doc. 1) should be **GRANTED** on the grounds that Respondents violated the INA and Petitioner's procedural due-process rights under the Fifth Amendment.

2. Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4) should be **DENIED AS MOOT** in light of the full relief recommended on the habeas petition.

3. The Court should declare that Petitioner's continued detention—more than ten months in total, including five months after an Immigration Judge granted bond—violates the INA and the Due Process Clause.

4. The Court should order reinstatement of the IJ's bond determination and release. Because an Immigration Judge has already conducted a full § 1226(a) custody hearing and found Petitioner neither a danger nor a flight risk, the Court should order that Petitioner be released under the same conditions that existed before the BIA erroneously sustained DHS's appeal. No further bond hearing should be required unless DHS demonstrates materially changed circumstances.

5. The Court should enjoin Respondents from re-detaining Petitioner—absent evidence that Petitioner has committed a crime or absconded in his immigration proceedings—without first providing notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden, by clear and convincing evidence, of justifying re-detention.

6. The Court should retain jurisdiction to consider any future motion for attorney's fees and costs under the Equal Access to Justice Act.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE